# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Founders Insurance Company, ) | Civil Action No. 5:15-cv-00408-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| John Hamilton a/k/a Jim Hamilton, ) | **ORDER AND OPINION** |
| Individually and d/b/a Aces High Club, ) | |
| Aces High Club and Kenneth Weatherford, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Founders Insurance Company ("Plaintiff"), filed this declaratory judgment action against Defendants John Hamilton a/k/a Jim Hamilton, individually and d/b/a Aces High Club ("Hamilton"), and Aces High Club ("AHC") (together "Defendants") seeking a declaration by the court that a Liquor Liability Policy issued by Plaintiff and bearing policy number LLSC00270 ("Policy") does not provide coverage to Defendants, create an obligation to defend Defendants or create an obligation to indemnify Defendants with regard to the lawsuit styled <u>Kenneth Weatherford v. John Hamilton, Aces High Club, John Calvin Sikes, Fish Tales a/k/a JS Fish Tales</u>, pending in the Court of Common Pleas for Orangeburg County (South Carolina) and bearing Case No. 2014-CP-38-00433 (hereinafter the "Underlying Lawsuit"). (ECF No. 1 at 1-2.)

This matter is before the court on Plaintiff's Renewed Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Renewed Rule 56 Motion"). (ECF No. 64.) Defendants and their Co-Defendant Kenneth Weatherford ("Weatherford") oppose Plaintiff's Renewed Rule 56 Motion asserting that it should be denied. (ECF Nos. 66 & 68.) For the reasons set forth below, the court **GRANTS** Plaintiff's Renewed Rule 56 Motion.

# I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of costs and interest. (ECF No. 1 at 2 ¶ 5–3 ¶ 11.)

# II. RELEVANT BACKGROUND TO THE PENDING MOTION

Defendants are involved in the Underlying Lawsuit that alleges their negligence on or about January 22, 2012, in serving Oscar Melvin ("Melvin") excessive amounts of alcohol was the cause of an assault perpetrated by Melvin against Weatherford at a different bar than AHC, which resulted in physical injury to Weatherford. (ECF No. 1 at 4 at ¶¶ 16–17.) Defendants claim they are insured and entitled to coverage under the Policy, and are entitled to have Plaintiff defend and indemnify them in regard to the Underlying Lawsuit. (Id. at 4 ¶ 19–5 ¶ 20.)

Plaintiff issued the Policy to Defendants with effective dates of June 3, 2011, through June 3, 2012. (ECF No. 64-2 at 8.) In the Policy, there is an "Exclusions to Coverage" subsection that contains a paragraph (k) titled "Assault and/or Battery," which paragraph provides as follows:

> This insurance does not apply to: . . . "Injury" arising from: (1) assault and/or battery committed by any "insured", any "employee" of an "insured", or any other person; (2) The failure to suppress or prevent assault and/or battery by any person in subparagraph k.(1) above; (3) The selling, serving or famishing of alcoholic beverages which results in an assault and/or battery; or (4) The negligent: (a) Employment; (b) Investigation; (c) Supervision; (d) Reporting to the proper authorities, or failure to so repost; or (e) Retention of or by a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by subparagraphs k.(1) through k.(3) above.

(Id. at 1, 3.)

On or about April 24, 2014, Weatherford filed the Underlying Lawsuit alleging claims

against Defendants, John Calvin Sikes and Fish Tales a/k/a JB Fish Tales for (1) "negligence/dram shop/negligence per se/survival/conscious pain and suffering"; and (2) to pierce the corporate veil. (ECF No. 1-2 at 9 ¶ 24–13 ¶ 37.) Plaintiff provided Defendants a defense in the Underlying Lawsuit pursuant to a reservation of rights. (ECF No. 64-1 at 3.)

On January 28, 2015, Plaintiff filed the instant declaratory judgment action in this court. (ECF No. 1.) On October 14, 2015, Plaintiff filed a Rule 56 Motion. (ECF No. 36.) Neither Defendants nor Weatherford filed opposition to Plaintiff's first Rule 56 Motion. However, because the copy of the Policy that was attached to the Complaint did not contain a declarations page, the court asked Plaintiff to file a complete copy of the Policy. On September 19, 2016, Plaintiff filed another copy of the Policy that also did not contain the declarations page. (ECF No. 53.) As a result, the court entered a Text Order on September 20, 2016, denying Plaintiff's first Rule 56 Motion without prejudice. (ECF No. 54.) Plaintiff moved for reconsideration of the September 20, 2016 Text Order on September 28, 2016 (ECF No. 55), which Motion was denied on January 24, 2017. (ECF No. 62.)

Thereafter, on February 13, 2017, Plaintiff filed the instant Renewed Rule 56 Motion. (ECF No. 64.)

### III.  LEGAL STANDARD

A.  <u>Declaratory Judgment Actions</u>

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the

litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

B.  Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 252; Shealy v. Winston, 929 F.2d 1009, 1012 (4th

4

Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

C.     General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. Id. "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471,

5

474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M&M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

"[E]xclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008) (internal citation omitted). However, even though "exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104 (S.C. Ct. App. 2006) (citing B.L.G. Enters., 514 S.E.2d at 330). Moreover, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." State Auto Prop. & Cas. Co. v. Brannon, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

D. <u>Coverage Questions, the Duty to Defend, and the Duty to Indemnify Under South Carolina Law</u>

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally are determined by the allegations of the complaint. Jessco, Inc. v. Builders Mut. Ins. Co., No. 10-1215, 2012 WL 1035721, at *2 (4th Cir. Mar. 29, 2012). If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend. City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578

(S.C. 2009) (citation omitted). Although a determination of an insurer's duty to defend is dependent upon the insured's complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action. Id. at 579; see also Collins Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899-900 (S.C. 2008). Moreover, an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer. USAA Prop & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008). If an insured has no duty to defend, it will know that it has no duty to indemnify. Am. S. Ins. Co. v. Moras Roofing, LLC, No. 2:09-1966-PMD, 2010 WL 2710588, at *4 (D.S.C. July 7, 2010).

## IV.     ANALYSIS

A.     The Parties' Arguments

In its Renewed Rule 56 Motion, Plaintiff argues that all of the damages sought by Weatherford resulted from the alleged assault and battery committed by Melvin. (ECF No. 64-1 at 8.) As a result, Plaintiff asserts that coverage and any other benefits from the Policy are not available to Defendants in the Underlying Lawsuit under the clear and unambiguous terms of the "Assault and/or Battery" exclusion. (Id.) Plaintiff further asserts that "South Carolina Courts have found assault and battery exclusions enforceable under South Carolina law." (Id. at 5–8 (citing, e.g., Sphere Drake Ins. Co. v. Litchfield, 438 S.E.2d 275 (S.C. Ct. App. 1993); Founders Ins. Co. v. The Barn Club, Inc., C/A No. 0:11-3132-CMC, 2012 WL 5398215 (D.S.C. Nov. 5, 2012); Founders Ins. Co. v. Dreams Entm't, Inc., C/A No. 3:10-cv-2420-CMC; 2011 WL 2135231 (D.S.C. May 31, 2011); USF Inc. Co. v. D&J Enters., C/A No. 0:09-2510-CMC, 2010 WL 2232211 (D.S.C. June 3, 2010)).) Accordingly, Plaintiff asserts that it is entitled to summary judgment and a declaration that coverage is not afforded to . . . [Defendants] for the claims asserted by Weatherford." (ECF No. 64-1 at 9.)

7

Defendants oppose the Renewed Rule 56 Motion asserting that it should be denied because "the underlying lawsuit asserts causes of action [e.g., for dram shop liability] that are not expressly excluded from coverage, but rather fall within the coverage provided, . . . ." (ECF No. 66 at 6.[1]) In support of this assertion, Defendants argue that "South Carolina law provides a civil remedy arising out of criminal statutes in civil dram shop and tavern liability cases." (Id. at 7 (citing, e.g., Tobias v. Sports Club, Inc., 504 S.E.2d 318, 319 (S.C. 1998) ("South Carolina Code Ann. § 61-4-580(2) prohibits the knowing sale of beer or wine to an intoxicated person, while § 61-6-2220 prohibits the sale of alcoholic beverages contained in minibottles to intoxicated persons. In recognizing a private cause of action for a violation of these statutes, the Court of Appeals stated that their purpose is to promote public safety, and to prevent an already intoxicated person from becoming even more intoxicated, and thus an even greater risk to the public at large, when he leaves the establishment.")).) Defendants further argue that because "[t]he premise of dram shop and tavern liability in South Carolina is to hold a person who profits from providing alcohol liable for the actions of those they sell or provide alcohol to," policies like the Policy exist "to provide liquor liability protection for torts committed by patrons [] who are alleged to have been over-served, are grossly intoxicated, and cause injury to another." (Id. at 7, 8.) In this regard, Defendants contend that the assault and battery exclusion as interpreted by Plaintiff would violate public policy since "every physical injury stemming from the sale, service, or furnishing of alcoholic beverages would be excluded from coverage under the Policy, which was expressly intended to provide liquor liability protection." (Id. at 7–8.)

In its Reply, Plaintiff requests that the court disregard Defendants' Memorandum in Opposition to the Renewed Motion for Summary Judgment as untimely filed. (ECF No. 70 at 1–

---

[1] The court observes that Weatherford filed a document joining "in all arguments and positions presented" by Defendants. (ECF No. 68 at 1.)

2.) Additionally, Plaintiff argues that it is entitled to summary judgment because the assault and battery exclusion is both enforceable and applicable to separate acts of negligence since the other claims arose from the alleged assault and battery. (Id. at 2–3 (citing, e.g., St. Paul Reinsurance Co. v. Riviello, 296 F. App'x 377 (4th Cir. 2008)).)

B.   The Court's Review

Upon its review, the court observes that the cases cited by Plaintiff clearly demonstrate that claims arising from an assault and battery, whether rooted in the actual assault and battery or couched in terms of negligence, fall within the parameters of an assault and battery exclusion and, therefore, such claims do not trigger an insurer's duty to defend or indemnify. See St. Paul Reinsurance, 296 F. App'x at 380 ("In Sphere Drake, the [South Carolina] state court of appeals held that an assault and battery exclusion in a nightclub's insurance policy applied to a patron's assault and battery and negligence claims arising from an incident in which the nightclub's "bouncer" assaulted a patron . . . . For the reasons articulated by the district court, we find that St. Paul is entitled as a matter of law to a declaration that it does not have a duty to defend or indemnify the Ollie's appellants in the underlying lawsuit."); Sphere Drake, 438 S.E.2d at 277 ("[T]he separate acts of negligence alleged by [the plaintiff] are not actionable without the assault and battery, because without the assault and battery there would be no damage suffered as a result of the alleged negligence of [the defendant nightclub]. The negligence claims are for bodily injury 'arising out of' assault and battery and come within the exclusion."); Founders, 2012 WL 5398215, at *3 ("Based on the above authority, the court finds that the assault and battery exclusion excludes Thomas's negligent security claim."); Founders, 2011 WL 2135231, at *2 ("That endorsement provides a broad exclusion for any claims arising out of an assault and battery. Based on the arguments presented by Founders, Johnson's claims appear to fall well within the scope of this exclusion."); USF, 2010 WL 2232211, at *5 ("As a matter of state law,

9

Watts' display of the firearm during the course of this robbery was an assault on all present and his shooting of Lord was a battery . . . . It follows that Lord's claims are excluded from coverage under the broad and unambiguous assault and battery exclusion in USF's policy.").

Analogous to the aforementioned, it is undisputed that Weatherford's claims in the Underlying Action arise from being shot, which serves as an assault and/or battery. (See ECF No. 1-2 at 7–8 ¶ 14.) The court further agrees with Plaintiff that the separate acts of "negligence/dram shop/negligence per se/survival/conscious pain and suffering" alleged in the Underlying Lawsuit would not be actionable without the assault and battery. As such, the claims for "negligence/dram shop/negligence per se/survival/conscious pain and suffering" arise from the alleged assault and/or battery, and are excluded from coverage under the plain terms of the Policy. Therefore, the court finds that the Policy's "Assault and/or Battery" exclusion unambiguously applies and expressly excludes from coverage injury arising from the circumstances alleged in the Underlying Lawsuit. Accordingly, after considering the Policy, the facts as alleged in the Underlying Lawsuit, and the law of South Carolina, the court finds that the Policy's "Assault and/or Battery" exclusion applies in this case, such that Plaintiff is not required to defend or indemnify Defendants.

## V. CONCLUSION

For the reasons set forth above, the court **GRANTS** Plaintiff's Motion for Summary Judgment. (ECF No. 64.) Plaintiff does not have any duty to either provide Defendants with a defense in the Underlying Lawsuit or indemnify Defendants for any judgment in the Underlying Lawsuit.

**IT IS SO ORDERED.**

                                                    United States District Judge

August 9, 2017
Columbia, South Carolina